UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division
CASE NO.: 04-61740-CIV-COHN/Snow

ACCESS 4 ALL, INC., a Florida not for
profit corporation, and PETER
SPALLUTO, Individually,

    Plaintiffs,

v.

THE ATLANTIC HOTEL
CONDOMINIUM ASSOCIATION, INC.,
a Florida not-for-profit Corporation and
LUXURY RESORTS INTERNATIONAL,
INC. a Florida Corporation,

    Defendants.
_____/

## DEFENDANTS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Defendants, by and through undersigned counsel, and pursuant to this Court's Order hereby file Defendants' Proposed Findings of Facts and Conclusions of Law and state as follows:

### FINDINGS OF FACT

1. Peter Spalluto ("Spalluto") is a C5-C6 quadriplegic as a result of an accident in 1966. He has side and lateral range of motion. He is neither vision nor hearing impaired.

2. Defendant, Luxury Resorts International, Inc. ("Luxury Resorts") is the developer of the Atlantic Hotel Condominium located at 601 North Ft. Lauderdale Beach Boulevard, Fort Lauderdale, Florida.

3.      The Atlantic Hotel Condominium opened in June 2004 and is composed of common areas such as the lobby and restaurant which are owned by Luxury Resorts, the developer, and various residential units which are purchased from the Developer in fee simple interest.

4.      Once the residential unit is sold by Luxury Resorts to the unit owner, Luxury Resorts lacks any legal capacity to alter, modify or restructure the residential interior of any of those units.

5.      Unit owners can place their residential unit in a rental program operated by a third party management company.  The third party management company is an independent organization with corporate offices in New York and manages rental properties all over the world.  Luxury Resorts has no ownership interest in this third party management company.  The rental income is split with the unit owner.  There are approximately ninety (90) units signed up for the rental program.

6.      Unit owners are charged a monthly maintenance fee by Luxury Resorts to maintain the building.

7.      Defendant, the Atlantic Hotel Condominium Association ("Association") does not own, operate or lease the property at issue and has no ownership or contractual or operational control over the third party management company.

8.      The Association has no employees.  It charges only $6.00 a month.

9.      Greg Lanzon is on the Board of Directors of the Association.  A friend of Lanzon's owns an accessible unit next to Lanzon's.

10. The Atlantic Hotel Condominium is fully accessible by anyone in a wheelchair. The property was recently built and great attention and detail were given to ensure it is readily accessible to and usable by individuals with disabilities.

11. The Atlantic Condominium Hotel has a policy in place to provide assistance to any disabled customers or guests.

12. In December 2004, two (2) friends, Jamie Cipprianni and Ralph Villani, visited Spalluto, who made reservations for them at the Hotel. Spalluto admits that he did not spend the night at the Hotel.

13. Although according to Mapquest, there are approximately 150 hotels within a two (2) mile radius of the Atlantic Hotel Condominium, Spalluto does not remember staying in any Hotel in Ft. Lauderdale, other than the Riverside Hotel.

14. There is no self-parking at the Atlantic Hotel Condominium and it does not provide any parking area for use by the public. All parking at the Atlantic is valet. Valet parking is outsourced to a company called USA Parking. Valets park all vehicles of any guest, resident, or visitor. The parking garage is for valet parking and employees' use only. No public parking exists in the building, only valet.

15. Valets were given a memorandum that informed them that if a motor vehicle has been outfitted for the disabled and it is not feasible for someone else to park it, the disabled individual will be permitted to park in the circular entrance way. Each valet has acknowledged receipt of this memorandum in writing. It states "Please be advised that upon arrival of any vehicles that do not contain driver side seats due to a disability, the guest will be permitted to self-park in the circular driveway (front of circular driveway) of the hotel."

16.     Two signs declaring the circular entrance way as an accessible van parking area have been posted.  Therefore, should a disabled individual need to self-park because their vehicle does not contain a driver seat, the guest would be on the shortest accessible route to enter the facility.

17.     The parking space on the Northwest side of the facility is for employees only and is not for public use.

18.     Spalluto drives a van that has been especially equipped to be driven using a wheelchair instead of a traditional driver's seat.   His vehicle can be driven by an able-bodied individual by changing a seat from the passenger side to the driver's side which takes a couple of minutes.

19.     Spalluto admits, however, that when he visited the property, he did not to let someone park his vehicle because he did not want to explain to them how to move the seat.  In addition, he did not want either of the individuals accompanying him to move the seat or drive the vehicle either.  Instead, Spalluto chose to park in an area that was not for "public" use.  Spalluto did not suffer any injury caused by any architectural barrier related to parking.

**<u>Entrance Access and Path of Travel</u>**

20.     The valet is located at the main entrance into the lobby and therefore, travel from parking to the accessible entrance is the shortest path.

21.     There are only two public entrances to the Atlantic Hotel Condominium.  The accessible entrance for the public is the circular driveway and is the main entrance to the building.  It is located on the Southwest corner.   The other public entrance is on the Eastside.

22. A third door is located within the restaurant but it is not a public entrance. It is only to be used by the restaurant staff. A sign is posted which specifically states that it is not a public entrance. The two doors next to it also have signs specifically stating "not a public entrance." Significantly, the three (3) multiple doors designated as "not a public entrance" are no more than eight (8) feet apart and only thirty (30) feet from the accessible public entrance.

23. There is a sign on the east door which designates it as public entrance and directs persons with a disability to the accessible entrance on the Southwest side.

24. A service entrance is not a "public area." It is "back of the house" or service." There are just two (2) doors for the public use: the main entrance and the side door in the main lobby.

25. The facility consists of only one tenancy, the Hotel Unit. There are no other tenants nor any other retail or restaurant. Because the restaurant is part of the Hotel Unit and not a separate tenancy it is not required to have an exterior accessible public entrance.

26. There is a ramp by the service entrance but that entrance is not a public entrance, it is an <u>employee</u> entrance. It is locked from the inside and employees use a code to enter. Access to the lobby from the service entrance, is through the kitchen.

27. Ramps are provided and paths of travel to suite entrance and restrooms meet minimum requirements. All ramps comply with ADAAG.

28. Defendants have or have committed financial resources to each of the following modifications:

   a. Extend the grab bars on the ramp by the pool.

      b.      Reconfigure the door to A1A to a five-pound pull.

      c.      Reconfigure doors to have sufficient maneuvering clearance. The doors could not be changed to swing in the opposite direction for either the door of the Spa Treatment Room or for Room 1211 because it is a safety issue for which there is insufficient room in the outside hallway.

      d.      Fix the gap in the sauna.

      e.      Move the tables in front of the elevators to provide clear access to the call button

      f.      Fix the gap in the threshold entrance into the Spa.

29.      Spalluto gained access to the Hotel. He accessed the Restaurant several times. The wheelchair he uses is powered and can navigate grades or slants. It is a Permobil 2K. He can go through a space twenty-eight inches wide.

**Access to Goods and Services**

30.      Spalluto checked in and out of the hotel and did not indicate he had any difficulty doing either.

31.      The following modifications have been made in regards to access to goods and services:

      g.      The seating is not fixed and therefore not an architectural barrier, however accessible seating has been ordered for the pool bar, the Trina Terrace and the Trina Restaurant.

      h.      T.D.D. systems are available upon request.

      i.      The cash register in the register in the restaurant is not for public use but for staff only and therefore not an issue.

      j.      The gift shop has been eliminated.

### Common Area Restrooms

32.    Two sets of public restrooms have accessible elements including grab bars behind and on the side of the toilet. Lavatory controls are lever type. The lavatory provides knee space for wheelchair access. Turn around space for wheelchairs are provided for the disabled community use.

33.    There is a disabled restroom with lavatory pipes covered. There is a separate enclosed stall that is a handicapped accessible restroom. In that stall, the lavatory pipes are covered.

34.    Each of the following has been modified in the public restrooms:

      k.      Offset rings have been obtained for the restrooms.

      l.      The mirrors have been lowered.

      m.      The hooks have been lowered.

35.    Mr. Spalluto gained access to and utilized the restroom.

### Accessible Guest Rooms

36.    The guest rooms are condominium units owned in fee simple by individuals who are not a party to this lawsuit.

37.    The interior of the residential units cannot be modified without the approval of the individual unit owners. Furthermore, unit owners are not required to and have the option of placing the unit in the rental program.

38. Notwithstanding each of the following has been modified and/or financial resources have been committed to irrevocably with permission of the Owner as to the guestrooms:

    n. Accessible seats have been ordered and installed for the roll in showers.

    o. Although the furniture which is movable is not an architectural barrier, the furniture in the accessible rooms has been re-configured.

    p. Room 607 is no longer in the rental program.

    q. The sliding glass doors to the balcony have been reconfigured to the requisite width.

    r. Levers are being installed on the sliding glass doors.

    s. Ramps are available upon request to access the balcony and a notice advising of this is posted in the guestroom.

    t. There is no shelf under the sink in the bathroom of the guestroom.

39. Spalluto never intended to spend the night in a guestroom and did not spend the night in a guestroom. Instead the reservation he made was for his two (2) friends.

## **CONCLUSIONS OF LAW**

1. This action arises under the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq.

2. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331.

3.      To establish a prima facie case under Title III of the ADA, a Plaintiff must meet his burden in establishing: (1) that he or she is disabled; (2) that the premises of the Defendant is a place of public accommodation; and (3) that he was denied full and equal treatment because of his disability.  Association for Disabled Americans, Inc. v. Concorde Gaming Corporation, 158 F. Supp. 2d 1353 (S.D. Fla. 2001).

4.      Defendants cannot make architectural modifications under the ADA to areas which it does not own.  See Access Now, Inc. and Dana Lamb v. Merristar Mang. Co., Case No.: 2:01-CV-FTM-29DNF (M.D. Fla. February 19, 2003).

5.      Plaintiffs admit that they did not know what other alleged violations existed at the time the Complaint was filed.  Therefore, Plaintiffs cannot establish notice as to any other alleged violation except for those in paragraph 17, because they were not known either by Plaintiffs or their expert before the Complaint was filed.

6.      Because Plaintiffs' Amended Complaint contains allegations regarding the individual units which are owned by the owners of the individual units who are not a party to this action, Plaintiffs have failed to name the proper parties to this action.  See Access Now, Inc. and Dana Lamb v. Merristar Mang. Co., Case No.: 2:01-CV-678-FTM-29DNF (M.D. Fla. February 19. 2003).

7.      Plaintiffs lack standing as to any violations not identified at the time the Complaint was filed.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 571 n.4 (1992); Moyer v. Walt Disney World Co., 146 F. Supp. 2d 1249, 1253-54 (M.D. Fla. 2000); Access Now, Inc. v. South Florida Stadium Corp., 161 F. Supp. 2d 1357, 1365-66 (S.D. Fla. 2001); Association for Disabled Americans v. Concorde Gaming Corp., 158 F. Supp. 2d 1353, 1363 n.7.

103770_3

9

8.      Plaintiffs only have standing as those alleged violations, which affect Plaintiffs' specific disabilities, which are related to mobility impairments. See Access Now, Inc. v. South Florida Stadium Corp., 161 F. Supp. 2d 1357, 1365-66 (S.D. Fla. 2001); Association for Disabled Americans, Inc. v. Concorde Gaming Corp., 158 F. Supp. 2d 1353, 1363-64 (S.D. Fla. 2001); see Lewis v. Casey, 518 U.S. 343, 358 116 S. Ct. 2174, 2183 n.6 (1996).  Accordingly, Plaintiffs lack standing as to any allegations regarding architectural barriers which are not related to mobility impairments.  See id.

9.      It is well established that a violation of the ADA requires proof as to each individual claimant.  Association for Disabled Americans, Inc., v. Concorde Gaming Corporation, 158 F. Supp. 2d 1353, 1363-64 (S. D. Fla. 2001).  When an association seeks standing on behalf of its members the following three elements must be met: (1) its members must otherwise have standing to sue in their own right; (2) the interests sought to be protected must be germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.  See Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 343 (1977).

10.     For an associational plaintiff to have standing under the ADA, all three (3) elements of the Hunt analysis must be satisfied, including the third requirement that the Association establish proof of an individual claimant.  See Access Now, Inc. v. Palm Beach County Board of County Comm., Case No. 00-8967-Civ-Hurley (June 10, 2002); Coral Springs Advocacy v. Strachman, Case No. 00-7381-Civ-Moreno (July 8, 2002); Access for America, Inc. v. Canaima, Inc., Case No. 02-80562-Civ-Hurley (October 2, 2002); Access for America v. Speedway SuperAmerica LLC, Case No. 01-14262-Civ-

Moore; Association for Disabled Americans, Inc., v. Concorde Gaming Corporation, 158 F. Supp. 2d 1353, 1363-64 (S. D. Fla. 2001); Concerned Parents to Save Dreher Park Center v. City of West Palm Beach, 884 F. Supp. 487, 488-89 (S.D. Fla. 1994). Because Access 4 All does not satisfy each of the three prongs of Hunt, it has no standing.

11. Under the ADA, a finding of a violation requires proof as to each individual claimant, in part because the relief afforded to each claimant would require an individualized assessment of what measures must be taken in order to comply with the ADA. See Concerned Parents to Save Dreher Park Center v. City of West Palm Beach, 884 F. Supp. 487, 488-89 (S.D. Fla. 1994); see also Terre Du Lac Ass'n, Inc. v. Terre Du Lac, Inc., 772 F.2d 467, 471 (8th Cir. 1985) (finding lack of associational standing where plaintiff failed to assert individualized proof of claims). Therefore, Access 4 All does not have standing to bring a lawsuit under the ADA without individual proof of each claim by its members.

12. It is undisputed that Spalluto's disability is limited to those related to mobility impairments. Assuming *arguendo* Access is not required to meet the third prong of Hunt, it lacks standing because Plaintiffs cannot establish standing based on mere allegations. Plaintiff's claims are limited only to those identified at the time the Complaint was filed and related to mobility impairments as Plaintiffs have no standing where they have suffered no injury in fact. Lujan, 405 U.S. at 564; Lewis v. Casey, 518 U.S. at 358. The only issues are those related to mobility impairments and Plaintiffs otherwise have no standing.

13. Under the ADA, a finding of a violation requires proof as to each individual claimant, in part because the relief afforded to each claimant would require an individualized assessment of what measures must be taken in order to comply with the ADA. <u>Concerned Parents to Save Dreher Park Center v. City of West Palm Beach</u>, 884 F. Supp. 487, 488-89 (S.D. Fla. 1994); <u>see also</u> <u>Terre Du Lac Ass'n, Inc. v. Terre Du Lac, Inc</u>., 772 F.2d 467, 471 (8th Cir. 1985) (finding lack of associational standing where plaintiff failed to assert individualized proof of claims). As such, Access does not, without individual proof of each claim by its members, have standing to bring a lawsuit.

14. To meet the constitutional requirements of individual standing, a Plaintiff must prove: (1) an injury in fact of a legally protected interest which is concrete and particularized, and actual and imminent; (2) a causal connection between the injury and the conduct complained of; and (3) it must be likely that the injury will be redressed by a favorable decision. <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-561 (1992).

15. To assert a claim, which meets the requirements of a "case or controversy," there must be an <u>actual and individual injury</u>, not simply a violation of a statute. <u>See</u> <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 n.1; 578 (1992) (to establish standing an injury "must affect the plaintiff in a personal and individual way").

16. Spalluto did not even try to stay at the Atlantic Hotel the day he visited the property. Based on the record evidence, Spalluto had no intention of staying at the Atlantic, nor to do so in the future. Therefore, Spalluto's claim is merely hypothetical and speculative. <u>Brother v. Tiger Partner, LLC</u>, 331 F. Supp. 2d 1368 (M.D. Fla. 2004).

17. Spalluto cannot genuinely show that he plans to spend the night at the Atlantic Hotel, and therefore, he is not entitled to injunctive relief as to rooms. Any

intent to stay at the Hotel in the future is merely hypothetical, conclusory, and speculative. See Shotz v. Cates, 256 F.3d 1077, 1081 (11th Cir. 2001); Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992); Brother v. Tiger Partner, LLC, 331 F. Supp. 2d 1368 (M.D. Fla. 2004); Lamb v. EID Management, LLC, Case No. 2:02-CV-312-FTM-29DNF * 10 (M.D. Fla. July 8, 2003); Brother v. CPL Investments, Inc., 317 F. Supp. 2d 1358, 1369 (S.D. Fla. 2004).  Accordingly, Spalluto's claims are dismissed for lack of standing because Plaintiffs have no real or immediate threat of injury based upon Spalluto's "continued" use of the resort or a "continued" inability to use the facility. Shotz v. Cates, 256 F.3d 1077, 1081 (11th Cir. 2001) (quoting Malowney v. Federal Collection Deposit Group, 193 F.3d 1342, 1348 (11th Cir. 1999) (Complaint which alleges only past incidents of discrimination "does not support a finding of an Article III case or controversy when the only relief sought is declaratory relief.")  See also Naiman v. New York Univ., 1997 WL 249970 at *5 (S.D.N.Y. 1997) (Denying standing where Plaintiff alleged four visits to defendant hospital where plaintiff did not show likelihood she would require services of defendant in the future); O'Brien v. Werner Bus Lines, 1996 WL 82484 at *4 (E.D. Pa. Feb. 27, 1996) (No standing where plaintiffs failed to show that they would use defendant's services in the future or defendant was likely to violate their rights under the ADA again).

      18.    The ADA Accessibility Guidelines ("ADAAG") set forth guidelines for accessibility to places of public accommodation.

      19.    The ADAAG incorporates the concept of construction tolerances in its provision that "all dimensions are subject to conventional building industry tolerances for field conditions." Access Now, Inc. v. Ambulatory Surgery Center Group, 2001 WL

103770_3                                     13

617529 *3 (S.D. Fla. 2001); ADAAG 3.2. Construction tolerances are permitted variations from given locations, dimensions, or alignments, based on field, material, manufacturing, and workmanship conditions. These exist in varying amounts for different construction elements. Ambulatory Surgery Center, 2001 WL 617529 at *3, *11. In addition, where ambiguous provisions or inadequate or inaccurate guidance or instructions are present in the ADAAG, a variation at some acceptable level may result and is appropriate. Id. at *3, *11.

20. In addition to construction tolerances, the ADAAG also provides an "equivalent facilitation exception" for those alternative designs or technologies that meet or exceed the accessibility provided for in the guidelines. Id. at *4. In this regard ADAAG 2.2 states:

> Departures from particular technical and scoping requirements of this guideline by the use of other designs and technologies are permitted where the alternative designs and technologies used will provide substantially equivalent or greater access to and usability of the facility.

Id.

21. This exception arises from the recognition that the Access Board could not address all design possibilities or existing or future technologies in their guidelines, and that some of these alternatives could provide equivalent or even better accessibility. Ambulatory Surgery Center, 2001 WL 617529 *4 (the government "does not enjoy a monopoly on good ideas" and the same objective may be accomplished in another manner). Therefore, an equivalent facilitation stands on its own as an appropriate standard for certain results that may differ from the ADAAG standards.

103770_3
14

22. Even if Plaintiffs could establish standing, Spalluto cannot state a *prima facie* case because he cannot meet the third element: 3) that he was denied full and equal treatment because of his disability.  Assoc. for Disabled Americans v. Concorde Gaming, 158 F. Supp. 2d 1353 (S.D. Fla. 2001).  Spalluto has alleged five (5) areas which he contends are not compliant with the ADA, specifically 1) parking; 2) entrance access and path of travel; 3) access to goods and services; 4) common area restrooms; and 5) accessible guest rooms Complaint ¶ 17.  Each of these either did not impose a barrier to access or has been addressed.  Accordingly, injunctive relief is inappropriate. Wooden v. Board of Regents of University Septin of Georgia, 247 F. 3d 1262, 1284 (11th Cir. 2001).

**Parking**

23. C.F.R. 36 section 36.102 Application (a) General, states "this part applies to any (1) "public accommodation."  An area that is not a public accommodation is not required to adhere to the ADAAG.  Furthermore, accessible parking for public is only required if "parking spaces are provided for self-parking" per ADAAG 4.1.2(5)(a). Because no area is provided for self-parking, no disabled parking spaces are required for the Atlantic Hotel.

24. Disabled are offered the same parking as non-disabled – valet parking. The ADA does not require a public accommodation to provide self parking.  It merely requires that if self-parking is provided, then it must be made available to the disabled. Since that is not the case here, Spalluto's allegations pertaining to parking should be dismissed.  ADAAG 4.1.2(5)(a).

**Entrance Access and Path of Travel**

25.  The Atlantic Hotel has only two (2) public entrances. The accessible entrance for the public is the main entrance of the building in the Southwest corner. A second entrance is located on the eats side of the building. A third door is located within a few feet of the second entrance but it is within the restaurant and is not for public use. It is to be used for restaurant staff and emergencies. Further, a sign by the second entrance directs persons with a disability to the accessible entrance on Terramar Street.

26.  The property owner may designate the number of entrances for a facility.

27.  ADAAG 4.1.3(8)(a) specifically states that one entrance may be considered as meeting more than one of the requirements of ADAAG 4.1.3(8)(a). The ADAAG does not require an increase in the number of entrances. 4.1.3(8)(a).

28.  The restaurant is part of the Hotel and is not required to have an exterior accessible public entrance. Only the Hotel is required to have an exterior accessible public entrance, which it does have. ADAAG 4.1.3(8)(a).

29.  Therefore, pursuant to ADAAG 4.1.3(a), fifty percent (50%) of the public entrances at the facility are accessible entrances. Accordingly, the number of accessible entrances at the facility fully complies with ADAAG 4.1.3(8)(a).

30.  Pursuant to ADAAG 4.1.3(9) the facility has the requisite number of accessible exits, including emergency accessible exits. Furthermore, pursuant to EXCEPTION: to 4.1.3(9) areas of rescue assistance are not required in buildings or facilities having a supervised automatic sprinkler system. The subject facility has a supervised automatic sprinkler system.

**Access to Goods and Services**

31. The counter identified as being in excess of 36", is no longer functional and, therefore, this issue is moot.

**Common Area Restrooms**

32. Spalluto has no standing as to the women's restroom because Plaintiff does not have standing to address any area for which he lacks actual knowledge. Moyer v. Walt Disney World Co., 146 F. Supp. 2d 1253, 1254.

33. Each public restroom has an accessible toilet or accessible stall. Each public restroom also has a lavatory with covered pipes as required under 4.19 and with adequate maneuvering clearance..

34. Only the lavatory in the accessible toilet stall is required to meet the ADAAG requirements and the lavatory in the main part of the public restroom is not required to comply per ADAAG 4.22.6.

35. The swing on the public restroom entrance doors have been modified from an inward swing into the restroom to an outward swing into the corridor. There is in excess of the 18 inches latch side clearance required by ADAAG 4.13.

36. Accordingly, the public restrooms are compliant with ADAAG.

**Accessible Rooms**

37. Spalluto does not have standing as to the accessible rooms because he did not stay in a room nor did he ever intend to stay. Brother v. Tiger Partner, LLC, 331 F. Supp. 2d 1368 (M.D. Fla. 2004).

38. Therefore, Plaintiffs cannot demonstrate any individual injury and cannot demonstrate Spalluto was denied equal access.

103770_3                                17

39.   Furthermore, Plaintiffs have failed to join the individual unit owners and, therefore, Defendants are unable to make any modifications to the individual units without the individual units owners.  Fed. R. Civ. P. 19; See <u>Access Now, Inc. and Dana Lamb v. Merristar Mang. Co.</u>, Case No.: 2:01-CV-FTM-29DNF (M.D.  Fla. February 19, 2003).

40.   Notwithstanding, the guestrooms are complaint with the ADA.

41.   All controls are operable without a closed fist.  The light fixtures on the desk and on the night stand by the bed have touch pad dimmers, which are operable by a touch of a conductive pad.  The devises, manufactured by Westek do not require "tight grasping, pinching, or twisting, of the wrist" per ADAAG 4.27.4.

42.   The items and fixtures are within reach limits as prescribed by ADAAG 4.2.5 and 4.2.6.

43.   The lavatory in the accessible guest room has the proper knee space as required by ADAAG 4.19.2.

44.   As to the balconies, ADAAG 9.2.2 (6)(d), EXCEPTION: states, "The requirements of 4.13.8 and 4.3.8 do not apply where it is necessary to utilize a higher door threshold or a change in level to protect the integrity of the unit from wind/water damage.  Where this exception results in patios, terraces or balconies that are not at an accessible level, equivalent facilitation shall be provided."  The facility faces the ocean and the sliding door is an outside door.  Therefore, it is necessary to use a higher threshold to protect the integrity of the unit from wind/water damage pursuant to the Florida Building Code.

45. A sign exists in the accessible rooms which informs the guests that a ramp is available for their use. The sign also states that the front desk may be contacted for other assistance to access the balcony.

**Plaintiff's Claims Are Moot**

46. The actions already taken by Defendants preclude Plaintiffs' available remedies because an issue is moot when actions subsequent to the commencement of the lawsuit create an environment in which the Court can no longer give meaningful relief. See Jews for Jesus, Inc. v. Hillsborough County v. Aviation Authority, 162 F.3d 627 (11th Cir. 1998); Florida Association of rehab Facilities, Inc. v. Florida Dep't of Health and Rehab Servs., 225 F.3d 1208, 1227 (11th Cir. 2000); Brother v. CPL Investments, Inc., 317 F. Supp. 2d 1358, 1372-73 (S.D. Fla. 2004)(plaintiffs' claims are moot and injunctive relief is inappropriate where defendant showed that the allegedly wrongful behavior with respect to alleged barriers could not reasonably be expected to recur).

47. In fact, an order by the court for injunctive relief would do nothing more than order Defendants to do what they have already done or more importantly to do what it can not do; e.g. make modifications on property owned by others. See Access for the Disabled and Cohen v. Brinker Florida, Inc., 02-60314-CIV-Martinez. Furthermore, "any decision on the merits of a moot case or issue would be an impermissible advisory opinion." Florida Association of Rehab Facilities, Inc. v. Florida Dep't of Health and Rehab Servs., 225 F.3d 1208, 1217 (11th Cir. 2000). The U.S. Supreme Court has held that Plaintiffs cannot be the prevailing party entitled to attorney's fees where a Defendant voluntarily changes its conduct, even if Plaintiffs'

desired result is obtained. <u>Buckhannon Bd & Care Home v. West Virginia Dept. of Health & Hum. Res.</u>, 532 U.S. 598, 605 (2001).

48.   Accordingly, Defendants are entitled to judgment with respect to Plaintiffs' Complaint in its entirety and Plaintiffs are not entitled to any of the relief sought. Injunctive relief is not warranted. <u>Wooden v. Board of Regents of University Septin of Georgia</u>, 247 F. 3d 1262, 1284 (11th Cir. 2001) ("injunctive relief is only appropriate if the party can establish a "real and immediate as opposed to a merely conjectural or hypothetical threat of <u>future</u> injury.")

Respectfully submitted,

  s/. Susan Potter Norton
Susan Potter Norton
Fla. Bar No.  0201847
Zascha Blanco Abbott
Fla. Bar. No. 0614671

Allen, Norton & Blue, P.A.
Attorneys for Defendants
Majorca Avenue, Suite 300
Coral Gables, Florida 33134
Telephone  (305) 445-7801
Facsimile   (305) 442-1578

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by facsimile and U.S. mail, postage prepaid, on this <u>8th</u> day of September, 2005, upon:

John P. Fuller, Esquire
Fuller, Fuller and Associates, P.A.
12000 Biscayne Boulevard, Suite 609
North Miami, Florida 33181

  s/. Susan Potter Norton
Attorney